GRC Coal Company, Petitioner *v.* Commonwealth of Pennsylvania for the Use of the Pennsylvania Game Commission, Respondent.

Argued October 8, 1981, before President Judge CRUMLISH, JR. and Judges BLATT and CRAIG, sitting as a panel of three.

*H. John Drayer,* with him *Henry Ray Pope, III, Pope and Pope,* for petitioner.

*William R. Pouss,* Assistant Counsel, for respondent.

OPINION BY JUDGE CRAIG, November 30, 1981:

Petitioner GRC Coal Company, as lessee of reserved coal mining rights on a tract of land in Cambria County, has appealed an order by the Board of Property prohibiting it from strip mining coal on the land without the permission of the respondent owner, the Pennsylvania Game Commission.

On May 20, 1941, J. Harrison Westover had conveyed 2178.8 acres[1] to the commission,

> EXCEPTING AND RESERVING to the grantors herein, their heirs and assigns, all coal and fire clay, with the right to mine and remove same without liability for damages and to use so much of the surface as may be necessary for mining operations, for a period of fifty years from the date hereof.

---

[1] The land was designated State Game Lands No. 184 by the respondent.

12

The issue is whether the language of that reservation authorizes not only deep mining but also strip mining, without any necessity for a special approval by the commission.

In 1943, Westover had executed a "Second Commitment to the Pennsylvania Game Commission," agreeing to deposit in a separate bank account a surface damage royalty payment of 5 cents per ton of coal mined for the reclamation following the conclusion of strip mining operations he was conducting. This arrangement continued when Annie Powell and the Lamp Coal Company, lessee under a 1968 coal lease agreement, resumed mining operations until 1971.

The present controversy stems from Annie Powell's "Assignment Of Leases And Royalty Payments" in 1974 to GRC; the commission refused to allow GRC to strip mine the coal.

Originally filed as a petition for declaratory judgment before this court, GRC's action was transferred by stipulation to the board, which has jurisdiction under Section 1207 of the Administrative Code.[2]

The board concluded that:

1. The Commission did not waive its surface rights on State Game Lands No. 184 in the 1941 deed from J. Harrison Westover and his wife.

2. GRC, the lessee of the reserved coal rights under the 1941 deed, does not have the right to remove the coal by the strip mining method without the approval or permission of the Commission.

---

[2] Section 21 of the Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §337, states in part, "[t]he Board of Property shall also have jurisdiction to hear and to determine cases involving the title to land or interest therein brought by persons who claim an interest in the title to lands occupied or claimed by the Commonwealth."

Contending that the board erred as a matter of law, GRC also attacks as unsupported by the evidence two of the board's findings of fact:

12. The Commission and GRC do not agree that the only feasible method to remove the coal on State Game Lands No. 184 is strip mining.

13. There is evidence that some deep or shaft mining occurred on State Game Lands No. 184.

The burden of showing "some positive indication that the parties to the deed agreed to authorize [strip mining]" rests on GRC. *Stewart v. Chernicky,* 439 Pa. 43, 49, 266 A.2d 259, 263 (1970).

GRC's evidence consisted of drilling records and the testimony of two witnesses who stated that deep mining was economically impractical due to rock formations above the coal seams; they concluded that the coal would have to be strip mined. On cross-examination, however, one of those witnesses admitted that at least three deep mine shafts exist on the property; one of them apparently had been started about the time of the original conveyance to the respondent. The witness stated that those operations were properly abandoned due to adverse geological conditions.

GRC thus maintains that the board should have found that strip mining was the only feasible manner of removing the coal.

Our interference with the board's exercise of judgment in this case is not warranted; the findings are supported by substantial evidence indicating that, at or near the time of the deed and sometime thereafter, the deep mining method was in fact pursued. Retrospective interpretation in light of recent actions by persons *other than the original parties* cannot accurately reflect the tenor of the bargain. Thus, neither GRC's drilling exploration records nor the current

economic viability of strip mining is determinative of
the grantor's original intentions.

The commission's evidence consisted of unrecorded
documents, letters and memoranda supporting its con-
tention that the right to strip mine was not reserved
in the deed; accepted by the board were a copy of
Westover's 1943 "Second Commitment," several ear-
lier Westover deeds for land adjacent to this parcel,
with specific reservations of the right to strip mine,
and numerous letters indicating payments of the sur-
face damage royalties to the commission over a period
of ten years. Respondents also offered a 1952 memo-
randum to the commission's division supervisor and a
1969 letter to Westover's trustee, both referring to
"agreements" and "authorization" for strip mining.[3]

---

[3] The memorandum, from Wildlife Conservation Bureau Director
Jay Gilford, stated:

> In 1943, to aid the war effort, the Commission authorized
> two permits to J. Harrison Westover, Esquire, of Spangler,
> to strip coal reserved by him from the above lands. The first
> permit called for a damage royalty of 2 cents per ton to the
> Commission. About September 3, 1948, Westover advised
> that there would be no further stripping under the first per-
> mit and that he had removed 9161.94 tons. The permit con-
> templated that Westover would use 2 cents a ton to level
> off, so far as possible, the elevations resulting from the
> stripping, but at our request he remitted the $183.24 he was
> holding and it was transmitted to the comptroller.

> The second permit, dated December 7, 1943, a copy of which
> is attached, was for 20 to 30 acres, at 5 cents a ton, but a
> difference of opinion arose between Westover and the Com-
> mission about the location of the area included in the second
> permit and Westover reputedly did no stripping thereunder.

> A few months ago we were advised that Westover had
> leased some of his coal to the George A. Potter Coal Com-
> pany, of Altoona. Deputy Attorney General Lehrman re-
> viewed the matter and advised that he saw no objection to
> permitting Potter to strip under the second permit to West-
> over, upon Potter's agreement to pay the commission 5 cents
> per ton.

We cannot sustain GRC's lengthy objections to the admissibility and probative value of this evidence. Section 505 of the Administrative Agency Law[4] establishes broad evidentiary guidelines for agencies, allowing them to receive all relevant testimony without regard to technical rules of evidence. The documents accepted by the board, demonstrating a course of conduct by parties who believed they were acting in accordance with the agreement, were certainly relevant to and determinative of the issue.

In addition, the nebulous language of the deed, not fully expressive of the parties' true intentions, dictated the board's examination of all pertinent circumstances attending the execution of the deed, as well as the subsequent acts of the original parties. *Rochester & Pittsburgh Coal & Iron Co. v. Makoma Coal Co.,* 271 Pa. 394, 114 A. 261 (1921).

Contrary to GRC's assertions, the evidence here "does not seek to vary the terms of the writing nor to show anything was omitted from its provisions, but merely tends to prove the meaning of the parties at the time the contract was executed." *Rochester,* at 398, 114 A. at 263. *See also, Leebov v. U. S. Fidelity & Guaranty Co.,* 401 Pa. 477, 165 A.2d 82 (1960).

Finding the board's conclusions fully supported by the evidence and in accordance with the law, we will not disturb them on review. *Pennsylvania Human Relations Commission v. Thorp, Reed and Armstrong,* 25 Pa. Commonwealth Ct. 295, 361 A.2d 497 (1976).

As an alternative basis for reversal, GRC challenges, on due process grounds, the board's composi-

---

Potter has evidently begun stripping as he forwarded Westover a check for $33.01, which Westover endorsed over to the Commission for 660.10 tons at 5 cents a ton. (See copy of my letter to Mr. Westover, dated August 26, 1952.)

[4] 2 Pa. C. S. §505.

tion and procedures. GRC first alleges that the board lacked independent judgmental capacity, depriving it of a fair and impartial hearing, because the members[5] have "statutory conflicts of interest" stemming from their other duties and the political nature of their positions. GRC also claims that its due process rights were violated by an impermissible commingling of "advocacy" and adjudicative functions, citing *Horn v. Township of Hilltown,* 461 Pa. 745, 337 A.2d 858 (1975).

In *Miller v. Department of Transportation,* 59 Pa. Commonwealth Ct. 446, 429 A.2d 1278 (1981), we held that due process principles were not violated when two attorneys for the same agency appeared in different roles in an employee demotion proceeding, as long as the functions performed by the attorneys were adequately separate so as to avoid actual prejudice. Even where one assistant attorney general served as a hearing officer in a license suspension case and another assistant attorney general from the same department prosecuted the case, we found no improper commingling of adjudicatory and prosecutorial functions. *Romano v. Sheppard,* 45 Pa. Commonwealth Ct. 19, 404 A.2d 758 (1979).

Thus, where the director of the Office of Civil Law represented the attorney general on the board, an assistant attorney general assigned to the Department of Community Affairs acted as counsel for the board, and two assistant attorneys general for the Game Commission represented the commission, the individual functions and interests were sufficiently independent to preclude improper commingling.

GRC's allegation of the members' partiality is founded only upon assumptions derived from GRC's

---

[5] The board is composed of the Attorney General, the Secretary of the Commonwealth, and the Secretary of Community Affairs. *See* Section 406 of the Administrative Code, 71 P.S. §116.

diligent research into the membership and responsibilities of various governmental offices, from a perspective skeptical of politics.

Its contention that the board's counsel drafted and circulated the adjudication without any consideration or decision by the members is also speculative and without evidentiary support. *Foley Brothers, Inc. v. Commonwealth,* 400 Pa. 584, 163 A.2d 80 (1960). The circulated draft merely solicited the members' review and comments because the case was "so close." Nor does GRC substantiate allegations of prejudice arising from the fact that the original board members designated representatives to replace them during the hearings and to assume their decision-making responsibilities.

Absent evidence of actual bias during the board's proceeding, we cannot hold that GRC was denied due process of law. *Bryan v. Pennsylvania Human Relations Commission,* 45 Pa. Commonwealth Ct. 125, 404 A.2d 1368 (1979).

Accordingly, we affirm.

ORDER

Now, November 30, 1981, the order of the Board of Property dated December 4, 1980, is affirmed.