**EMPIRE COAL MINING & DEVELOPMENT, INC., Petitioner,**

v.

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

**EMPIRE COAL MINING & DEVELOPMENT, INC., Petitioner,**

v.

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 1996.

Decided June 25, 1996.

---

W. Boyd Hughes, for Petitioner.

Kurt J. Weist, Assistant Counsel, for Respondent.

Before DOYLE and SMITH (P.), JJ., and RODGERS, Senior Judge.

SMITH, Judge.

Empire Coal Mining and Development, Inc. (Empire), at No. 2443 C.D. 1995, petitions for review of an order of the Environmental Hearing Board (EHB) that affirmed the action of the then Department of Environmental Resources (DER) denying Empire's application for a permit to perform surface mining. The questions Empire states are (1) whether the EHB exceeded its statutory jurisdiction by not confining its review of Empire's title documents to permitting purposes only, thereby usurping jurisdiction reserved to the courts of common pleas to determine interests in real property; (2) whether the EHB's determination that Empire needed the consent of the surface owner is unsupported by substantial evidence; and (3) whether the EHB erred by failing to conclude that DER had no legal authority to require Empire to move its mining activity 450 feet to the west of the toe of an adjacent landfill, under a consent order and agreement executed between Empire and DER that allegedly made no mention of the landfill.

DER counterstates the questions presented as (1) whether Empire met its burden under 25 Pa.Code § 86.64(b) of demonstrating a right to conduct surface mining, where the deed of severance on which it relies does not explicitly authorize the use of surface mining methods, and Empire failed to prove

with affirmative evidence that the parties to that deed intended to authorize the mineral owner to conduct surface mining; and (2) whether denial of the permit was required where evidence established that disruption and pollution of the hydrologic regime would continue if it were granted, and Empire failed to demonstrate affirmatively that the proposed operations would prevent such damage.

## I

The extensive findings of the EHB establish the following history of this dispute. The surface and mineral estates of the 60-acre site involved were severed by a deed of December 18, 1940. The mineral estate is now owned by the Commissioners of Northumberland County (County), and the surface estate is owned by the Susquehanna Coal Company (Susquehanna). Susquehanna entered into a lease with Mount Carmel Township (Township) in 1983 authorizing the Township to deposit nonhazardous municipal waste on a 28-acre portion of the site that encompasses an abandoned strip mine running east and west. DER's Bureau of Solid Waste Management (Bureau of Waste Management) granted the Township a permit to construct a sanitary landfill on the site.

The Township's landfill permit required that any coal seams and outcrops be buffered by a minimum of 25 feet of renovating soil. In 1987 the Township requested permission from DER to remove coal from the disposal area, rather than installing the buffering soil. The Bureau of Waste Management, believing that only incidental mining was contemplated, approved removal of coal subject to conditions including that the removal be to the west of the current filling location, that it in no way interfere with the operation of the landfill and that any mining outside the active disposal area receive approval from DER's Bureau of Mining and Reclamation (Bureau of Mining).

Dennis M. Molesevich, now president of Empire, and his partner submitted an "Operations Plan" to the Township pledging that mining operations would not interfere with landfill operations. In November 1987 Susquehanna and Empire's predecessor entered

into a lease, subject to yearly renewal, which stated that the lessee was not granted authority to interfere with the rights of the Township to operate the landfill. Empire's predecessor then secured rights to the coal through a lease from the County, which specifically reserved rights previously acquired by any others and noted that the area leased was within the landfill area.

Empire began mining operations in April 1988 and initially made satisfactory progress; however, production stalled, and Empire removed no coal during most of 1989. After an inspection in June 1988 showed that Empire had installed a drag line and begun digging a deep pit, the Bureau of Mining determined that the operation should be covered by a surface mining permit. The Township ultimately decided to close the landfill facility. The Bureau of Waste Management informed the Township in 1989 that certain areas of the landfill exceeded allowable elevations and that waste would have to be relocated to other active disposal areas for proper closure.

DER and Empire entered into a Consent Order and Agreement (consent order) on July 28, 1989, which provided that the mining operation was illegal without a permit, although it had commenced pursuant to the Bureau of Waste Management approval; that it would submit a full and complete application for a permit and could continue to mine during the permitting process; and that it would comply with DER requests for amendment, supplement or modification of the application. Empire filed an incomplete application on December 29, 1989.

Because of mining activities, leachate had ponded between the landfill and the mine, and the location of the mine prevented proper closure of the landfill. In February 1990, the Bureau of Mining noted the lack of mining activity and informed Empire of the necessity of moving the drag line to the west quickly to allow for the environmentally sound closure of the landfill. On July 19, 1990, the Bureau of Waste Management issued an order to the Township including a closure plan for the landfill that referred to moving the mining activity a total of 450 feet

from the landfill.[1] The Bureau of Mining sent Empire a "correction letter" on July 30, 1990, identifying 37 items in the surface mining permit application that required correction before it could be approved, including moving the mining area.

In September 1990, Susquehanna notified Empire that the lease of the surface rights, due to expire November 11, 1990, would not be renewed and that Empire was expected to vacate the premises by the end of the term. Empire's counsel responded in a letter asserting that Empire had become vested with legal title to the coal under the land by virtue of its lease with the County permitting mining to exhaustion and that a Pennsylvania Supreme Court decision supported Empire's position that it could go upon the surface of the land and mine without the consent of the surface owner. Counsel demanded repayment of all royalties paid to Susquehanna under the "superfluous" lease.

The Bureau of Mining notified Empire that it was aware that the lease had expired and requested submission of a new lease. Empire's final revised application, submitted December 18, 1990, continued to identify the surface lease and the previously executed written consent of Susquehanna as documents upon which Empire based its right to enter. Further, the application continued to include the 450–foot area needed for closure of the landfill for proposed mining activities. At a final conference Empire declined to provide further title documents. The Bureau of Mining denied the surface mining permit application by letter of February 2, 1991, stating reasons including failure to establish a right to enter and mine the site, interference with the closure of the landfill and shortcomings of maps and plans.

Empire appealed to the EHB, which granted DER's motion for summary judgment. On further review, this Court concluded that material issues of fact remained, if Empire's allegations were accepted as true that title documents show that the land involved here is part of the same tract as that involved in the Supreme Court case on which Empire relied and that the same words were used in the pertinent clauses of the relevant documents. The Court remanded for the EHB to give Empire the opportunity to present its evidence. *Empire Coal Mining & Dev., Inc. v. Department of Environmental Resources,* 150 Pa.Cmwlth. 112, 615 A.2d 829 (1992), *appeal denied,* 535 Pa. 640, 631 A.2d 1011 (1993).

On remand, Empire for the first time identified *Mount Carmel R. Co. v. M.A. Hanna Co.,* 371 Pa. 232, 89 A.2d 508 (1952), as the case upon which it relied. A licensed professional engineer, Albert Magnotta, testified as to Empire's chain of title and as to the use of surface mining in the anthracite region in general in the 1940s. He was permitted to state his non-legal opinion that the clause conveying mineral rights in 1940 "[t]ogether with the right to mine and remove said coal and other minerals," N.T., p. 668, must have been intended to convey the right to remove the coal by any means that was economically feasible, because it contained no express limitation.

The EHB dismissed Empire's appeal, concluding, among other things, that DER had no choice but to deny the application because the documents Empire submitted did not show a right to enter and to surface mine the site. The language in the deed of severance did not convey such rights expressly or by implication under Empire's evidence and applicable case law interpretations of similar grants. Also, the lease from the County to Empire conveyed only such rights as the County retained, which had been limited by the County's failure to appeal the grant of a permit to the Township to operate a landfill at the site.[2]

1. The Township did not appeal that order but Empire did. The EHB dismissed Empire's appeal, and this Court affirmed the dismissal, concluding that Empire lacked standing to challenge the order. *Empire Coal Mining & Dev., Inc. v. Department of Environmental Resources,* 154 Pa. Cmwlth. 296, 623 A.2d 897, *appeal denied,* 535 Pa. 625, 629 A.2d 1384 (1993).

2. The scope of this Court's review of a decision of the EHB is limited to determining whether the necessary findings of fact are supported by substantial evidence in the record and whether errors of law or constitutional violations were committed. *Starr v. Department of Environmental Resources,* 147 Pa.Cmwlth. 196, 607 A.2d 321 (1992).

## II

Among the minimum requirements for the grant of a surface mining permit are those stated in 25 Pa.Code § 86.64, relating to right of entry, which provides in part that the application shall contain a description of the documents upon which the applicant bases his legal right to enter and to mine and shall state whether that right is the subject of pending court litigation. Section 86.64 continues:

(b) The application for a permit shall provide one of the following for lands within the permit area:

(1) A copy of the written consent of the current surface owner to the extraction of coal by surface mining methods.

(2) A copy of the document of conveyance that expressly grants or reserves the right to extract the coal by surface mining methods and an abstract of title relating the documents to the current surface land owner.

The law of conveyance or reservation of the right to strip mine was summarized in *Stewart v. Chernicky*, 439 Pa. 43, 266 A.2d 259 (1970). Construction of a deed must be governed by the intention of the parties at the time of the transaction, as gathered from a reading of the entire deed; if the deed is ambiguous, then all the attending circumstances at the time of execution should be considered to aid in determining the object of the parties. The burden rests with the person asserting a right to destroy or injure the surface that accompanies strip mining to show some positive evidence that the parties to the deed agreed to authorize practices that might result in those consequences. A mere authorization to "mine," without more, does not encompass the right to strip mine.

Empire first argues that the EHB, sitting as fact finder in the permit review process, lacks jurisdiction to interpret title documents and to make determinations of rights to estates in land. That power, Empire asserts, is reserved exclusively for the courts of common pleas pursuant to Section 931 of the Judicial Code, 42 Pa.C.S. § 931, *as amended.* Empire interprets the requirement in Section 86.64(a), that an applicant set forth any pending litigation challenging the right to enter and to mine, as providing notice to DER that the title is suspect so that DER, in its discretion, may withhold issuance of a surface mining permit pending resolution of the property rights dispute before a court. In the present case, no such court litigation existed.

Empire contends that the severance deed language "to mine and remove said coal and other minerals" from the site constitutes prima facie evidence of title and of right of entry for permit application review purposes. It argues that the EHB should not have gone beyond making this prima facie determination to interpret actual estates in land, citing *Fairview Water Co. v. Pennsylvania Public Utility Commission*, 509 Pa. 384, 502 A.2d 162 (1985). In *Fairview*, it was held that a statute conferred upon the Pennsylvania Public Utility Commission power to determine whether an easement was necessary and proper for the general welfare of the public but not authority to determine the validity and scope of a disputed easement.

DER's contention that Empire never met its burden of proof in regard to Section 86.64(b) to establish the right to enter and to surface mine is closely related to Empire's assertions as to the jurisdiction of the EHB. DER notes that Empire's affirmative factual representation that the "identical language" in a reservation of mineral rights relating to another portion of the same tract had been held by the Supreme Court to confer rights to enter and to surface mine without the owner's consent was the basis of Empire's position before the EHB initially, on its petition for review to this Court from the EHB's grant of summary judgment and in its prehearing memorandum to the EHB on remand. Once *Mount Carmel R. Co.* was identified as the source of Empire's representations, however, they were shown to be false.

The language at issue in *Mount Carmel R. Co.* was the clause reserving to the grantor of a railroad right-of-way to all minerals under the surface " 'with the full and free right of digging for, mining and taking away the same, at any time or times, *or in any manner or by any method of mining* . . . .' " *Id.,*

371 Pa. at 237, 89 A.2d at 510 (emphasis added in *Mount Carmel R. Co.*). The Supreme Court noted that strip mining is an accepted manner or method of mining and concluded that it was clear beyond question that the emphasized language encompassed a right to strip mine. The language in Empire's chain of title is not identical to that interpreted in *Mount Carmel R. Co.* Most significantly, it omits any phrase resembling the language that the Supreme Court specifically held to include the right to strip mine.

In view of the clear and unambiguous language of Section 86.64(b)(2), Empire's position concerning the EHB's jurisdiction is essentially correct. The regulation requires submission of a document that "expressly" grants or reserves a right to surface mine. The EHB, pursuant to its statutory "power and duty to hold hearings and issue adjudications ... on orders, permits, licenses or decisions of the [DER]," Section 4(a) of the Environmental Hearing Board Act, Act of July 13, 1988, P.L. 530, 35 P.S. § 7514(a), has jurisdiction to determine whether a particular document expressly grants or reserves the right to surface mine; however, the question of interpretation of a doubtful grant never arises. An applicant with a doubtful grant is free to seek a declaration in common pleas court concerning the precise nature of the estate that it holds.

■ This Court flatly rejects Empire's assertion that the "verbatim language" of the 1940 deed conveys a right to strip mine. As a simple matter of the meaning of language, the phrase "the right to mine and remove said coal" does not "expressly" grant a right to strip mine—any such grant must be inferred. Because Empire failed to submit any document meeting this minimum require-

ment for the grant of a surface mining permit, the EHB correctly concluded that DER had no choice but to deny the application.[3]

Empire's other contentions regarding its efforts to establish a right to enter and to surface mine without consent of the owner are therefore moot. Assertions that the testimony of Magnotta should have been credited and that the Board denied it due process by taking notice after the close of the hearing of official reports describing mining activities in the area at the time of the deed of severance have relevance only if the EHB has authority to interpret a doubtful grant of a right to surface mine. Any error that may have occurred with regard to official notice was harmless. The conclusion that Empire failed to fulfill the requirements of 25 Pa. Code § 86.64(b) is sufficient in itself to require affirmance of the EHB's order; therefore, there is no need to address Empire's contentions concerning the effect of the consent order and the asserted lack of authority for DER to require Empire to move its operation to accommodate closure of the landfill.

### III

Consolidated with the above case is Empire's petition for review at No. 3311 C.D. 1995, from an order of the EHB affirming DER's decision not to renew Empire's license to conduct mining in Pennsylvania. Empire questions (1) whether the EHB erred by concluding that the consent order was an unappealed order of DER, that Empire was in violation of the consent order by not commencing backfilling within 30 days of notice of DER's denial of Empire's application for a surface mining permit and that the consent order satisfied criteria set forth in

3. Empire cites *Commonwealth v. Fisher*, 364 Pa. 422, 72 A.2d 568 (1950), where the Supreme Court quoted an earlier statement that the right to work a mine involves the right to penetrate the surface of the soil for the minerals, to remove them in the manner most advantageous to the mine owner and to use such means and processes as may be necessary in the light of modern advancements. Empire argues that *Fisher* supports its right to mine using the strip mining method without the consent of the landowner.

As DER points out, the Supreme Court stated in *Stewart* that strip mining should not be viewed

as merely an improved process of mining, such that a grant of the right to mine, where the parties contemplated only deep mining, would include a right to mine by the improved process of strip mining. "Any language in this Court's opinion in Commonwealth v. Fisher ... and other cases relying thereon, which may have left this mistaken impression, should be disregarded." *Stewart*, 439 Pa. at 52 n. 9, 266 A.2d at 264 n. 9. Empire has ignored the Supreme Court's later express rejection of the proposition it relies upon from *Fisher*.

Section 3.1 of the Surface Mining Conservation and Reclamation Act (SMCRA),[4] and (2) whether DER has authority to deny a surface operator's mining license renewal application even though there is assertedly no documentation on DER's records showing a violation of the laws.

The EHB found that Empire received notice of DER's denial of the permit application and filed a notice of appeal to the EHB. Empire ceased mining, but it took no steps to backfill the pit or otherwise reclaim the site. DER inspected the site on 11 occasions between March 1991 and August 1993, each time providing Empire a report stating that it was in violation of Paragraph 2.e of the consent order, that it was incurring a daily monetary penalty and that it should begin compliance immediately. In 1992 DER filed a petition in this Court seeking, inter alia, an order directing Empire to begin reclamation. That proceeding was stayed pending the outcome of Empire's 1992 petition for review from the EHB's grant of summary judgment to DER in the permit denial appeal. DER granted annual renewals of Empire's operator's license in 1991 and 1992 because the reports of its violations of the consent order had not been properly entered in the computer records as violations. The records were corrected, and violations appeared of record in regard to Empire's 1993 license renewal. In June 1993 DER denied renewal of the license for being in violation of the consent order by failing to reclaim the site.

In disposing of Empire's assertion that DER must renew the license where there was no adjudication or final enforcement order relating to a violation, the EHB referred to Section 3.1(b) of SMCRA, 53 P.S. § 1396.3a(b). Section 3.1(b) provides that DER shall not issue or renew a surface mining operator's license if it finds that an applicant "has failed and continues to fail to comply or has shown a lack of ability or intention to comply with an adjudicated proceeding, cessation order, consent order and agreement or decree...." Paragraph 2.e of the consent order provided in part: "In the event that Empire's application for a permit is denied, Empire shall immediately cease and desist the extraction of coal and initiate restoration of the Site within thirty (30) days of receipt of notice of the application denial."

The EHB concluded that Paragraph 2.e was not ambiguous and did not provide for reclamation only after receipt of notice of denial of the permit that was final beyond further appeal; that no further order by DER was necessary to trigger Empire's duty to commence reclamation; and that stays and continuances in related proceedings and the intervening license renewals DER granted did not excuse Empire's underlying failure to comply with the consent order. The EHB held that DER was required by SMCRA and the nearly identical regulation at 25 Pa.Code § 87.17 to deny license renewal while the violations were continuing.

■ Empire argues that the consent order, as a contract, suffers from "latent ambiguity." Latent ambiguity exists when the terms are not facially ambiguous, but they are rendered so by proof of collateral circumstances. *Z & L Lumber Co. of Atlasburg v. Nordquist,* 348 Pa.Superior Ct. 580, 502 A.2d 697 (1985). Empire asserts latent ambiguity "due to the facts which led to [Empire's] appeal [to the EHB from the permit denial] in relation to Paragraph 2(e) of the [consent order] and the backfilling requirements...." Brief of Petitioner at p. 15. Empire appears to argue further that its express waiver of rights to appeal the terms and findings of the consent order did not waive its right to a good-faith review of the permit application, and DER's bad-faith review and denial of the permit meant that the consent order requirements were never triggered. Hence there was no violation upon which DER could rely to deny renewal of Empire's license.[5]

Although this Court does not agree with the EHB that the language of Paragraph 2.e of the consent order is clear, the Court none-

---

4. Act of May 31, 1945, P.L. 1198, *as amended,* added by Section 1 of the Act of July 16, 1963, P.L. 238, 52 P.S. § 1396.3a.

5. DER emphasizes that Empire presented neither its "latent ambiguity" nor its implied covenant of good faith arguments to the EHB and requests the Court to conclude that these argu-

ments are waived. Although new theories, they are related to the overall central issue of the proper interpretation of the consent order, which the EHB did decide.

theless sees no error in the conclusion that the consent order was not ambiguous as a matter of law. The EHB or the courts can provide affirmance of a denial of a permit, but only DER could provide Empire with the "notice of the application denial" specified in Paragraph 2.e. Empire in essence concedes this point by not contending that the consent order was patently, i.e. facially, ambiguous. Empire ties its claims in this proceeding to its position in the permit application proceeding and to allegations of bad-faith review by DER in that proceeding.

As detailed above, however, there was no error in DER's review of the permit application. No further order from DER was required to trigger Empire's obligations under the consent order. DER reminded Empire of its obligations in the permit denial letter and provided notice of violations in the subsequent inspection reports, and DER's corrected records showing Empire's ongoing violations of the consent order required it to decline to renew Empire's license in 1993 under Section 3.1 of SMCRA. The orders of the EHB are therefore affirmed.

### ORDER

AND NOW, this 25th day of June, 1996, the orders of the Environmental Hearing Board in the above-captioned matters are affirmed.