Nello FIORE, Appellant

v.

COUNTY OF ALLEGHENY.

Nello Fiore, Appellant

v.

County of Allegheny.

Commonwealth Court of Pennsylvania.

Argued Nov. 10, 2010.

Decided Feb. 1, 2011.

Ronald T. Elliott, Butler, for appellant.

Howard M. Louik, Assistant Solicitor, Pittsburgh, for appellee.

BEFORE: LEADBETTER, President Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge, and BROBSON, Judge, and BUTLER, Judge.

OPINION BY President Judge LEADBETTER.

Nello Fiore appeals from the order of the Court of Common Pleas of Allegheny County, which declared that coal rights owned by Fiore "do not confer upon [him] the right to surface mine and/or strip mine" a public park in Allegheny County (County). We affirm.

Fiore filed two actions with common pleas after the County denied him access to the park, known as South Park, for preliminary drilling.[1] The first action sought a declaratory judgment that Fiore had the right to strip mine South Park, while the second sought the appointment of a Board of Viewers, alleging that the County's denial of access to the park was a *de facto* taking.[2] The County filed preliminary objections to both actions. In both sets of preliminary objections, the County asserted, among several other arguments, that Fiore's right to mine the property did not include a right to strip mine.

At a hearing, the parties "specifically requested ... that the Court first resolve the issue of whether or not [Fiore] has the right to employ a strip mining method to extract coal from the subject property." Common pleas opinion at 2. Common pleas took evidence on the matter, which included expert and lay testimony as well as a site visit, and then entered the order at issue in this appeal, under the docket numbers of both cases, declaring that Fiore does not have the right to strip mine the park.[3] Appeals to this court in both

1. These two actions were heard together by common pleas, and were both subject to the order appealed in this case. They were not, however, formally consolidated until after they were appealed to this court.

2. Fiore asserts that, based on his estimate of the amount of coal under the park, his mineral rights are worth over $100 million. Fiore inherited the rights from his brother, Fred Fiore. Fred Fiore purchased the rights in 1985 for $5000. In 1997, after the death of Fred, Nello Fiore, in his capacity as executor of his brother's estate, reported the value of the rights as $100.

3. In its opinion, common pleas stated that it "did not and has not ruled upon the pending preliminary objections." Common pleas opinion at 2. However, both parties argue, and this court agrees, that the order at issue in this case effectively granted at least one of the County's preliminary objections and that the order is dispositive of the entire case and therefore serves as a final appealable order. *See* Pa. R.A.P. 341.

actions followed. This court consolidated the two appeals.

The parties agree Fiore owns the coal rights under South Park. These rights were granted by deed to the Pennsylvania Mining Company in 1902, and then again in a subsequent deed in 1909. The 1902 deed grants the right to:

All the coal ... in and under all that certain tract of land.... Together with all and singular property improvements ways, waters, watercourses, rights, liberties, privileges, hereditaments and appurtenances whatever thereunto belonging or in anywise appertaining and the reservations and remainders rents, issues and profits hereof; and all the estate, right, to the interest property, claim and demand whatsoever, of the said party of the first part, in law, equity or otherwise howsoever of in and to the same and every part thereof.

Reproduced Record (R.R.) at 17a–22a. The 1909 deed, apparently intended to clarify the rights granted, states:

Together with the right to mine and remove all and any part of the coal, without being required to provide for the support of the overlying strata or surface, and without being liable for any injury to the same, or to anything thereon or therein by reason therefore by reason of the manufacture of the same, or other coal into coke, and with all reasonable privileges for venting, punching and draining the mine together with the free and uninterrupted right of way through and under said lands, and to build, keep and maintain, roads and ways, in and through said mines forever, for the transportation of said coal, and if coal and other things necessary for mining purposes, from and to other lands which now or hereafter may belong to said party of the second part, its successors and assign. This deed being made for the purpose of vesting mining rights in the said Pittsburgh Coal Company of Pennsylvania, formerly Pennsylvania Mining Company. Together with all and singular treatments, hereditaments and appurtenances thereunto belonging or in anyways appertaining and the reversions, remainders, rents, issues and profits thereof; and also all the estate, right, title, interest, property, claim and demand whatsoever, as well as in equity of the said parties of the first part, of, in or to the described premises, and every part and parcel thereof, with the appurtenances. To Have and To Hold, all and singular the above mentioned and described premises together with the appurtenances unto the said party of the second part, its successor and assigns forever.

R.R. at 23a–27a. There appears to be no dispute that land referred to in the above deeds includes South Park, and that Fiore validly holds title under both deeds.

Before common pleas, Fiore asserted that the deeds granted him a right to strip mine the park because they met the "four factor test" laid out in *Commonwealth v. Fitzmartin*, 376 Pa. 390, 102 A.2d 893 (1954). Common pleas expressed skepti-

Because the County's preliminary objections in both actions included the argument that Fiore had no right to strip mine, we find it impossible to conclude that a court order to exactly that effect could be viewed as doing anything other than sustaining the objection in both cases. In addition, the order that Fiore had no right to strip mine effectively ended this litigation at the trial court level. If common pleas' order stands, Fiore cannot prevail in his declaratory judgment action, as the court has determined he does not have the right he seeks to have declared. In addition, he cannot prevail in his action for the appointment of a Board of Viewers, because his claim that the County's actions constituted a taking was contingent on his asserted right to strip mine.

cism that *Fitzmartin* was still good law, but found the issue did not need to be decided, because Fiore had failed to establish two of the four factors. We find that not only does *Fitzmartin* not control the outcome of this case, but also that the elements within that case flagged by Fiore cannot be fairly characterized as setting forth a test for determining the right to strip mine.

In *Fitzmartin*, our Supreme Court found that the deed at issue gave its holder the right to strip mine. That decision was based on an evaluation of the language in the specific deed in that case and did not hinge on the factors listed by Fiore and common pleas. The so-called "four factor test" comes from dicta in *Fitzmartin*, in a portion of the opinion in which our Supreme Court is summarizing one party's argument:

> The defendants, who are lessees of the mineral rights, claim a right to strip mine the coal upon the following grounds: (a) that the general language of the reservation is broad enough to include strip mining; (b) that there is no prohibition against strip mining, nor limitation of mining to deep mining; (c) that they are expressly given the right to mine all coal on the land, together with a release of liability for damages to the land; (d) that the nature of the land involved is unimproved rocky mountainous terrain; and (e) that the following cases which the learned Chancellor, in a very able opinion relied upon, are analogous and controlling . . .

*Fitzmartin*, 376 Pa. at 395, 102 A.2d at 895 (citations omitted). Fiore takes the first four of the five items on this list, and, with very little explanation, dubs them the "four factor test." Fiore cites no cases which have applied this "test." Common pleas found that Fiore had failed to establish the first and fourth elements of this test. We,

however, find that the above language is not controlling.

In fact, the decision in *Fitzmartin* was based on the text of the particular deed, which dated from 1921 and granted the right to "all the coal . . . in and under the surface . . . without any liability whatsoever for damages to said land." *Id.* at 396, 102 A.2d at 895. The Court found that in order to give meaning to the language of the deed, and allow access to all coal in and under the surface, strip mining must be allowed. *Fitzmartin* distinguished an earlier case, *Rochez Brothers, Inc. v. Duricka*, 374 Pa. 262, 97 A.2d 825 (1953), by noting that *Rochez* involved agricultural land, while the land at issue was unimproved.

Less than ten years after *Fitzmartin* was decided, our Supreme Court began to move away from its holding in that case. In *Wilkes–Barre Township School District v. Corgan*, 403 Pa. 383, 170 A.2d 97 (1961), the Court held that a similar deed did not include the right to strip mine. The deed in that case:

> excepted and reserved to the grantor, ownership in the coal and other minerals in, under and upon the land, and also the right and privilege of removing the same. The grantor was given the right to make and drive tunnels and passageways under the surface for the purpose of mining. The deed also stipulated, inter alia, that the grantor would not, in any event, incur liability for any injury to the surface of the land or improvements thereon, by reason of the mining and removal of the coal or minerals, and did not guarantee lateral or vertical support.

*Id.* at 385–86, 170 A.2d at 98. Interpreting this deed, the Court found that "[w]hat the parties manifestly intended was that the coal was to be removed by the method, then known, and accepted as usual and

commonplace. This was vertical tunnel, or shaft mining." *Id.* at 389, 170 A.2d at 100–01.

The Supreme Court moved further away from *Fitzmartin* in *Stewart v. Chernicky,* 439 Pa. 43, 266 A.2d 259 (1970). In that case, our Supreme Court examined a deed which granted title to the coal in and under the tract, "[t]ogether with the right . . . to drain and Ventilate said mines by shafts or otherwise. . . . With a full release of and without liability for damages for injury to the surface." *Id.* at 49–50, 266 A.2d at 263–64. Our Supreme Court stated that:

> no land owner would lightly or casually grant strip mining rights, nor would any purchaser of land treat lightly any reservation of mining rights which would permit the grantor or his assignee to come upon his land and turn it into a battleground with strip mining. Therefore, the burden rests upon him who seeks to assert the right to destroy or injure the surface to show some positive indication that the parties to the deed agreed to authorize practices which may result in those consequences. Particularly this is so where such operations were not common at the time the deed was executed.

*Id.* at 50, 266 A.2d at 263 (internal citations and quotations omitted). The deed at issue in *Stewart* was executed in 1902, and testimony in that case established that strip mining was not common in the area at the time the deed was signed. Our Supreme Court in *Stewart* went on to find not only that the deed at issue contained no positive indication that strip mining was intended, but also that language in the deed referring to the right to drain and ventilate the mine was an indication that underground mining had been intended:

> The right to mine and remove coal by deeds conveying land in language peculiarly applicable to underground mining does not include the right to remove such coal by strip mining methods. Nor will the mere authorization to 'mine,' without more, encompass the right to strip mine.

*Id.* at 52, 266 A.2d at 264 (internal citations omitted). The Court in *Stewart* expressly did not consider the current use of the surface land controlling, stating that, "the utility or quality of the land involved is not a determinative factor." *Id.* at 46 n. 2, 266 A.2d at 261 n. 2 [citing *New Charter Coal Co. v. McKee,* 411 Pa. 307, 191 A.2d 830 (1963) ].

In both *Stewart* and *Wilkes–Barre Township School District,* the Court declined to explicitly overrule *Fitzmartin,* instead distinguishing it based on extremely subtle differences between the language of the deeds.[4] However, it is clear that our Supreme Court has been moving away from its holding in *Fitzmartin,* and we find that the Supreme Court's more recent decisions in *Wilkes–Barre Township* and *Stewart* control.[5] This court's prior rul-

---

**4.** While the deeds in this case, *Wilkes–Barre, Stewart* and *Fitzmartin* all have unique language, they have such striking similarities that making a textual distinction between them is extremely difficult. All four deeds were written at a time when shaft mining was the predominant, if not exclusive, method of coal mining. All four deeds include a general grant of rights to the coal under the subject property, and while they do not explicitly specify a method of removal, they all refer to procedures exclusive to shaft mining, such as venting and draining. All four deeds include a release of liability for damage to the surface estate and waive the right of support. With this level of similarity in the essential elements of the deed and the circumstances surrounding their execution, any distinctions between them are exceedingly tenuous.

**5.** Fiore asserts that *Stewart* can be distinguished because it dealt with land that was improved, whereas *Fitzmartin* and, allegedly, this case deal with unimproved land. This

ings on this topic take a similar view, looking to *Stewart* as definitively establishing the rules under which a deed should be interpreted when considering strip mining rights. *See Empire Coal v. Dep't of Envtl. Res.*, 678 A.2d 1218 (Pa.Cmwlth.1996); *Compass Coal Co., Inc. v. Pa. Game Comm'n*, 71 Pa.Cmwlth. 252, 454 A.2d 1167 (1983).

Taking a similar approach, our Supreme Court has also found no right to strip mine in cases where the deed grants the right to mine "without being required to provide support of the overlying strata," reasoning that this phrase makes clear that the intent of the parties to the deed was that the overlying strata would stay in place, not be removed by strip mining. *Merrill v. Mfrs. Light & Heat Co.*, 409 Pa. 68, 185 A.2d 573 (1962); *Rochez Bros.* This approach has recently been followed by the Superior Court. *Amerikohl Mining Co., Inc. v. Peoples Natural Gas Co.*, 860 A.2d 547 (Pa.Super.2004).

It is clear from an examination of the deed in this case and the facts found by common pleas that Fiore does not have a right to strip mine in South Park. Common

pleas found as a fact that "at the time of the original conveyance, strip mining was not employed in the Commonwealth of Pennsylvania or in the Allegheny County area." Common pleas opinion at 15. Under *Stewart*, the burden was therefore on Fiore to establish that the intent of the parties to the original deeds included strip mining. Not only did Fiore fail to present any evidence which would tend to establish this before common pleas, but, as in *Stewart*, the deeds contain language that positively indicates that shaft mining was intended ("privileges for venting, punching and draining the mine").[6] R.R. at 23a–27a. In addition, the 1909 deed grants the right to mine "without being required to provide for the support of the overlying strata or surface," which, under *Merrill* and *Rochez Brothers*, is an indication that the parties to the deed intended that the surface would not be removed. *Id.* For these reasons, we affirm the conclusion of common pleas that the deed at issue does not encompass a right to strip mine.[7, 8]

Judge McCULLOUGH did not participate in the decision in this case.

---

argument suffers from a number of flaws. First, common pleas, based on extensive testimony and a site visit, found that the park at issue in this case was improved property. Second, and even more importantly, *Stewart* explicitly states that the current use of the land is not a determinative factor. *Stewart*, 439 Pa. at 46 n. 2, 266 A.2d at 261 n. 2. Considering the current status of the land is antithetical to *Stewart* because the core holding of that case is that the intent of the original parties to the deed must be controlling. The use that a particular tract has been put to more than a hundred years after the execution of the deed sheds no light whatsoever on the intent of the original parties, and therefore should not be considered.

6. As *Stewart* and expert testimony before common pleas in this case made clear, ventilation and drainage are issues unique to shaft

mining, and are not a part of the strip mining process.

7. Fiore also argues that ambiguities in deeds should be resolved against the grantor and in favor of the grantee, which in this case would mean resolving any ambiguity in his favor. However, the Supreme Court in *Stewart* squarely addressed this argument, and while it acknowledged the rule of construction, it held that it "ought not be so liberally applied as to make a contract for the parties that they did not intend to make for themselves." *Stewart*, 439 Pa. at 52, 266 A.2d at 264. Just as in *Stewart*, we find that as there is no ambiguity in the deed, this rule of construction has no application in this case.

8. Finally, Fiore also argues that this court should disregard prior litigation regarding the mining rights on the subject tract that took place in 1978 and 1979. This litigation, as

## ORDER

AND NOW, this 1st day of February 2011, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby AFFIRMED.

## DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent. The 1902 deed grants Fiore the right to remove all coal "in and under the land" without liability for any damage to the surface estate or the support estate.[1] It is difficult to imagine a broader reservation of a property interest in coal. Over the years, our Supreme Court has construed deeds for the purpose of determining whether they permit the owner of the coal to extract that coal by strip mining. The deed most like Fiore's deed was that construed in *Commonwealth v. Fitzmartin*, 376 Pa. 390, 102 A.2d 893 (1954), which is still good law. Under *Fitzmartin*, the 1902 deed must be construed to grant Fiore the right to extract his coal by means of strip mining. Otherwise, Fiore's fee simple title to certain coal is meaningless.

In *Fitzmartin*, the language of the deed provided that "all the coal ... in and under the surface of said land" could be mined "without any liability whatsoever for damages to said lands." *Id.* at 392, 102 A.2d at 894. Our Supreme Court found it significant that the coal in question could

be removed only by strip mining. It explained that

> [u]nless, therefore, the words "all the coal * * * in * * * the surface of said land * * *" refer to and reserve the right to strip mine the coal, they would be meaningless, because the coal on the surface cannot, the parties agree, be removed by deep mining.

*Id.* at 399, 102 A.2d at 897. Here, the words "[a]ll the coal ... *in* and under all that certain tract of land ..." in Fiore's deed have been rendered meaningless by the trial court because his coal cannot be extracted by deep mining methods, as the parties to this controversy agree. R.R. 17a (emphasis added).

The deed in *Fitzmartin*, as does Fiore's deed, contained language authorizing the owner of the coal to construct shafts, drains, drafts, and ventilation. However, the Supreme Court declined to hold that this language proved an intent of the parties that the coal could be extracted only by deep mining. Instead, the Supreme Court relied on the "reservation in this deed," which was "so similar" to that in "the Fisher case." *Fitzmartin*, 376 Pa. at 399, 102 A.2d at 897. Indeed, the Supreme Court held that *Commonwealth v. Fisher*, 364 Pa. 422, 72 A.2d 568 (1950), "controls this case." *Id.* Thus, the Supreme Court held that the deed at issue in *Fitzmartin* gave the owner of the coal the right to remove that coal by strip mining.

---

described in the briefs, was a series of contract disputes between Fiore's brother, the County, and several mining companies, which does not appear to have any bearing or *res judicata* effect on the current action. Common pleas mentioned this litigation in its opinion, but did not expressly rely upon it. The County argues that some of the positions taken in these suits constitute judicial admissions by Fiore's predecessors in title, but it is unnecessary to reach this issue to resolve this case.

1. The 1902 deed grants Fiore the

> right to mine and remove all and any part of the coal without being required to provide for the support of the overlying strata or surface, and without being liable for any injury to the same. . . .

Reproduced Record at 20a (R.R. __). This identical language appears also in the 1909 deed. R.R. 26. Otherwise the 1909 deed consists of a metes and bounds description of the land.

In *Fisher*, the owner of the coal rights appealed an injunction restraining his ability to use strip mining to remove the coal that could not be removed by deep mining. The surface owner contended that the deed did not authorize this manner of extraction because strip mining was not anticipated when the deed was executed in 1855. Further, the surface owner claimed it was entitled to surface support. The Supreme Court ruled against the surface owner and dissolved the injunction.

The Supreme Court found that removing coal by starting at the surface and working down "was the earliest known method in Pennsylvania of mining anthracite coal and was originally performed by hand." *Fisher*, 364 Pa. at 426, 72 A.2d at 570. It went on to observe that

> [t]he invention and use of power shovels for the removal of the overburden was, of course, a later development, but there is no rule of law which would preclude defendant, having the right to mine the coal, from using methods for that purpose made possible by modern machinery and inventions.

*Id.* at 426–427, 72 A.2d at 570. It further explained that a grantee "is given such rights as are necessary for the reasonable and proper enjoyment of the thing granted." *Id.* at 427, 72 A.2d at 570 (quotation and citation omitted).

Based on these long-standing principles, the Supreme Court reasoned in *Fisher* that the owner of the coal was entitled "from time to time to avail himself of modern inventions if by so doing he can more fully exercise and enjoy or carry out the object for which the way was granted." *Id.* at 428, 72 A.2d at 570. Thus, the Supreme Court concluded that the owner of the coal had the right to excavate that coal by a method presently available for that purpose even though not anticipated, perhaps, by the parties to the deed.

The Supreme Court further held that this result was required because the deed in *Fisher* released the owner of the coal from the obligation of surface support. It found that the deed language providing the "full, free, absolute and exclusive right" to mine coal "in or upon any part of the land" implicitly released the owner of the coal rights from having to provide surface support. *Id.* at 429, 72 A.2d at 571. It reached this conclusion in spite of deed language requiring that necessary digging "be conducted with as little injury or damage" to the surface owner's estate "as shall be practicable *consistently with the success of the same.*" *Id.* (emphasis in original). The Supreme Court interpreted the deed, as a whole, to mean that "the success of the digging and removal of the coal was to be the *paramount objective,*" even where the surface or support estates would be damaged as a result. *Id.* (emphasis in original).

In sum, the Supreme Court held that the deed in *Fisher* conferred the right to remove all of the coal, whether it was located near the surface or deep within the land, "by any method, old or new, appropriate and necessary for that purpose." *Id.* at 430, 72 A.2d at 572. The owner of the coal rights was authorized to use modern methods of strip mining to remove coal too near the surface to be obtained by any other method of mining.

This case is on all fours with *Fitzmartin*. The deed language in the instant case is similar to that of the *Fisher* and *Fitzmartin* deeds. Specifically, the 1902 deed grants Fiore the right to mine "[a]ll the coal ... in and under all that certain tract of land." R.R. 17a. The deed further grants

> the right to mine and remove all and any part of the coal *without being required to provide for the support of the overlying strata or surface, and without being*

*liable for any injury to the same* or to any thing thereon or therein by reason thereof or by reason of the manufacture of the same or other coal into coke and with all reasonable privileges for ventilating, pumping and draining the mines together with the free and uninterrupted right of way through and under said lands....

R.R. 20a (emphasis added).[2] In short, the reservation of rights in the 1902 deed is just as broad and all-encompassing as that in the *Fisher* and *Fitzmartin* deeds.[3] The deed releases the owner of the coal from having to provide support, and it goes one step further: it releases the owner of the coal from any damage to the support estate caused by the extraction of the coal. The deed grants Fiore "free and uninterrupted right of way through and under said lands" to access the coal. R.R. 23a. Finally, the parties in this case have stipulated that this coal can be extracted only by surface mining and not by deep mining. Whether by pick-axe or by bulldozer, the instant deed contemplates that the mineral rights owner is permitted to mine the coal by whatever reasonable means necessary to effect its removal.

The majority, pointing to *Wilkes–Barre Township School District v. Corgan*, 403 Pa. 383, 170 A.2d 97 (1961) and *Stewart v. Chernicky*, 439 Pa. 43, 266 A.2d 259 (1970), argues that the Supreme Court has moved away from its holding in *Fitzmartin*. I disagree.

In *Corgan*, the deed in question granted the owner of the coal the right to drive tunnels under the surface to extract the coal. The deed released the owner of the coal from liability for injury to the *surface* of the land and did not require him to provide lateral or vertical support. The deed did not expressly release the owner of the coal from damage to the support estate, and there was no indication that the coal owned by Corgan could be extracted only by surface mining. The Supreme Court found that the reservation of rights in the *Corgan* deed was "clearly dissimilar and not nearly so all-encompassing as to the use of the surface of the land" granted to the owners of the coal in *Fisher* and *Fitzmartin*. *Corgan*, 403 Pa. at 391, 170 A.2d at 100–101. Significantly, the Supreme Court did not overrule either *Fisher* or *Fitzmartin*, but rather, distinguished them on the facts in holding that the deed in *Corgan* did not intend that the coal could be excavated by strip mining.

In *Stewart*, a jury awarded damages to the owner of the surface estate against an owner of coal who refused to restore the land he had strip mined. Damages were awarded in the amount necessary to return the removed overburden and to plant new trees. The owner of the coal rights appealed, arguing that his deed released him from "liability for damages for injury to the surface." *Stewart*, 439 Pa. at 49, 266 A.2d at 263. The deed gave the owner of the coal the right to drain and ventilate the land. However, the *Stewart* deed did not release the owner of the coal from liability for damage to the support estate, nor was the deed broadly worded to include the right to remove all the coal *in* the land, as was the case in the *Fitzmartin* deed. Further, the coal could be removed by deep mining. Based on these differences,

---

2. The Fiore complaint, the trial court, and the majority opinion attribute this quoted language to the 1909 deed. A close review of the record reveals that all of the operative language appears in both the 1902 and 1909 deed.

3. In *Fitzmartin*, the release of liability with respect to the support estate was found to be "implicit" in the deed language. Here, by contrast, the deed expressly releases Fiore from liability for damage to the support estate.

the Supreme Court held in *Stewart* that the deed did not release the owner of the coal from liability for damage caused by strip mining.[4]

Once again, the Supreme Court declined to overrule *Fitzmartin*, choosing instead to distinguish the two cases on their facts. The Supreme Court explained that in *Fitzmartin*, the parties had agreed that the coal could only be removed by strip mining; thus, the deed's language permitting the removal of all of the coal in the land would be rendered meaningless if strip mining were not permitted. Indeed, the Court found that *Fitzmartin* was correctly decided, stating that permitting strip mining was the "more rational and probable interpretation" of the deed. *Id.* at 54, 266 A.2d at 265. The Supreme Court went on to state that there was no claim of "special circumstances" in *Stewart* as there was in *Fitzmartin*, *i.e.*, that the coal could be excavated only by strip mining. *Id.*

Our Supreme Court's recent decision in *Belden & Blake Corporation v. Department of Conservation and Natural Resources*, 600 Pa. 559, 969 A.2d 528 (2009), is also instructive. In *Belden*, the Supreme Court held that a deed's grant of mineral rights to natural gas includes the right to possess the surface owned by the Commonwealth to the extent it was necessary to extract the gas. Analogizing to coal rights, the Supreme Court explained that

> [o]ne who has the exclusive right to mine coal upon a tract of land has the right of possession even as against the owner of the soil, so far as it is necessary to carry on . . . mining operations.

In *Belden & Blake*, the Supreme Court did not limit its inquiry to the language of the appurtenant clause in the deed to determine the scope of the mineral rights granted. Rather, it focused on whether the mineral rights owner's proposed method of extraction was necessary to access the subsurface resources.

In the case at hand, we are faced with precisely the same "special circumstances" that existed in *Fitzmartin*. Fiore's coal can be removed only by strip mining; Fiore's deed contains a broad reservation of rights that permits the removal of all coal in the land; and the deed expressly releases Fiore from liability for damage to the surface and support estates. These factors set this case on all fours with *Fitzmartin* and factually distinguish it from *Corgan* and *Stewart*. In declining to overrule *Fitzmartin*, the Supreme Court has instructed that *Fitzmartin's* principles are properly applied to factually similar cases, which includes the case at bar.

*Fitzmartin*, not *Stewart*, governs this case, as the parties conceded and the trial court held. However, the trial court erred in its application of *Fitzmartin*. It erred by finding that strip mining was not employed in Pennsylvania in 1902. Indeed, the Supreme Court explicitly recognized in *Stewart*, 439 Pa. at 50 n. 7, 266 A.2d at 263 n. 7, one of the primary cases on which the majority relies, that the method of "strip

---

4. In these deed cases, the ownership of the coal estate was separated from the ownership of the surface estate. The surface owner relied on common law principles to protect the use and enjoyment of that surface estate. In *Stewart*, for example, the surface owner sought to have his surface estate restored to its pre-mining condition in a common law trespass claim for damages. Notably, statutory law protects the surface estate; indeed, that statutory law requires land reclamation even where the same person owns the surface and coal estates. Section 4(a)(2)(F) of the Surface Mining Conservation and Reclamation Act, Act of May 31, 1945, P.L. 1198, *as amended*, 52 P.S. §§ 1396.1–1396.19a, 1396.4(a)(2) provides that "any person" wishing to surface mine coal must reclaim the land.

mining was not unknown in 1902" in the Commonwealth. The trial court also erred in holding that unpaved walking and biking trails constitute "improvements" within the meaning of *Fitzmartin*.

For these reasons, I would reverse the trial court's decision to strip Fiore of his fee simple title to certain coal. I would hold that the deed grants Fiore the right to excavate his coal by strip mining.[5]

Judge BROBSON joins in this dissenting opinion.

5. Our job is to construe the deed in accordance with contract principles and property law and not to use those principles as a vehicle for environmental regulation. Although the deed confers upon Fiore the right to employ strip mining, the sky is not falling on South Park. Fiore must comply with the Surface Mining Conservation and Reclamation Act, which has been significantly revised since 1970, when *Stewart* was decided. The Surface Mining Act requires Fiore, and all surface mine operators, to reclaim the land after the coal is removed. Section 4(a)(2)(F) of the Surface Mining Act requires the surface mine operator to develop a "complete and detailed plan for the reclamation of the land affected," including "the written consent of the landowner to entry upon any land to be affected by the operation." 52 P.S. § 1396.4(a)(2)(F). The obligation to carry out the reclamation plan is secured by a bond, which will be forfeited if the land is not reclaimed. 52 P.S. § 1396.4(d). Section 4.5(h)(3) also states, in pertinent part, that

no surface mining operations ... shall be permitted ... [w]hich will adversely affect any public owned park ... unless approved jointly by the department and the Federal, State, or local agency with jurisdiction over the park. ...

52 P.S. § 1396.4e(h)(3).