# Oberly et al., Appellants, *v.* H. C. Frick Coke Company.

*Equity—Mines and mining—Underlying coal—Accumulation of gas—Drilling of bore hole from surface—Absence of proof of irreparable injury—Preliminary injunction—Dissolution.*

1. The refusal to grant or continue a preliminary injunction is error only when the right threatened with invasion is an unquestionable one, and the only protection from irreparable injury is to be found in a court of equity.

2. An owner in fee of coal lands conveyed the underlying coal "together with the free and uninterrupted right of way under said land at such points and in such manner as may be necessary and proper for the purpose of digging, mining, draining, ventilating and carrying away said coal, hereby waiving all damages arising therefrom or from the removal of all the said coal, together with

the privileges of mining and removing through said described premises other coal belonging to said parties of the second part, their heirs and assigns, or which may hereafter be acquired." After a portion of the coal had been mined and the supports removed explosive gas, endangering the mine and those working therein, accumulated over the overlying strata. Such gas could not be reached by an air current from the fan and the only practicable method of removing it was by a bore hole from the surface to the high point of the strata. The owner of the coal entered upon the surface and prepared to drill a bore hole ten inches in diameter for the purpose of releasing gas 520 feet below. The lower court entered a preliminary injunction restraining him from so doing and subsequently dissolved same. *Held*, the injunction was properly dissolved.

Argued June 4, 1918. Appeal, No. 90, Jan. T., 1918, by plaintiffs, from decree of C. P. Fayette Co., No. 904, in equity in case of John Oberly and Mary Oberly v. H. C. Frick Coke Company, a Corporation. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING and SIMPSON, JJ. Affirmed.

Bill in equity for injunction.

REPPERT, J., filed the following opinion:

## FINDINGS OF FACT.

### I.

By deed dated October 19, 1889, recorded in the recorder's office of Fayette County in Deed Book No. 91, page 329, James F. Hustead, the owner of the fee, with his wife, conveyed to Gilbert T. Rafferty and Charles Donnelly all the nine foot or Connellsville vein of coking coal in and underlying all that certain tract of land situate in North Union Township, in said county, describing it by metes and bounds, containing 109 acres and 46 perches.

"Together with the free and uninterrupted right of way under said land at such points and in such manner as may be necessary and proper for the purpose of digging, mining, draining, ventilating and carrying away

said coal, hereby waiving all damages arising therefrom or from the removal of all the said coal, together with the privileges of mining and removing through said described premises other coal belonging to said parties of the second part, their heirs and assigns, or which may hereafter be acquired."

## II.

By sundry mesne conveyances title to the said coal and mining rights became vested in H. C. Frick Coke Company, a corporation of Pennsylvania, defendant, and title to 99 acres and 38 perches of said tract of land, excepting and reserving the said vein of coal and mining rights, became vested in the plaintiffs.

## III.

On or about February 27, 1918, the defendant entered upon the surface of plaintiffs' land, and began preparations for drilling a bore hole ten inches in diameter for the purpose of releasing gas from its mines, the coal being about 520 feet beneath the surface.

## IV.

The Hustead tract of coal is part of defendant's Lemont No. 1 mine and is now being operated as part of the workings of that mine. The coal is transported through the underground workings to an opening on the surface two and a half miles distant. The mines are ventilated by a fan located the same distance from this tract. The current of air from the fan is distributed through the mine. A portion of the Hustead coal has been entirely mined, the supports removed, and falls from the overlying strata, called gob, loosely occupies the space from which the coal has been taken. Explosive gas endangering the mine and those working therein, caused by the removal of the coal, has accumulated over the gob. It is impossible to reach the accumulation of gas by an air current from the fan. Its removal is necessary to the operation of the mine. It is lighter than air and the only practicable method of removing it

is by a bore hole from the surface to the high point of the gob, thus allowing it to escape. Under such circumstances the law requires that this be done.

## V.

The superintendent of the mine and the mine inspector of the defendant company testify that the gob from the mining of the coal under the surface of plaintiffs' land causes the accumulation of gas complained of, and that if the defendant was not engaged in mining the coal under that tract the bore hole would not be needed. There is no denial of this testimony and no reason to doubt the facts thus testified to. For the purpose and in the manner above described the bore hole when completed will be a part of the ventilating system of the mine.

### DISCUSSION.

The plaintiffs allege that the action and conduct of the defendant in entering upon their land with the object of drilling and maintaining said bore hole, are unlawful and without authority or right under the grant of the coal owned and operated by the defendant company.

The rights of the owner of coal when severed from the surface as to working and surface rights are thus set forth in "The Law of Mines and Mining," Barringer & Adams, Edition of 1897, page 576:

"It is a general rule of law that, when anything is granted, all the means of attaining it and all the fruits and effects of it are also granted; when uncontrolled by express words of restriction all the powers pass which the law considers to be incident to the grant for the full and necessary enjoyment of it. Consequently, a grant or reservation of mines gives the right to work them, to enter and to mine, unless the language of the grant itself provides otherwise or repels this construction. And this right is so inseparable from a grant of minerals, that not only is it necessarily an implied incident there-

of, but it and its derived rights cannot be restrained or excluded by a special affirmative power to do other acts, or by a grant of other privileges necessary or convenient to the working of mines.

"The right to work the mine involves the right to penetrate the surface of the soil for the minerals, to remove them in the manner most advantageous to the mine owner, and to use such means and processes in mining and removing them as may be necessary in the light of modern improvements in the arts and sciences......

"The bare right to work carries with it the right to use so much of the surface as is reasonably necessary. The mine owner has the right to enter and take and hold possession even as against the owner of the soil, and to use the surface so far as may be necessary to carry on the work of mining, even to the exclusion of the owner of the soil. What is necessary and reasonable may be determined by reference to what is customary, and is a question of fact.

"Most frequently the privileges above described as impliedly incident to the right to mine are expressly granted or reserved in the instrument creating a mineral estate; but their character and extent are not altered by this expression, though there may be of course express privileges added which would not otherwise be implied. These rights do not create an estate in the surface, but are easements to do certain acts thereon.

"Surface rights and the incidental rights, such as that to use shafts, whether expressed or left to implication, may be used for the purpose only of mining under the particular premises conveyed, and not as a means of removing minerals from other lands. This, of course, may, however, be changed by the terms of the contract."

As we view it, this expression of the law is in harmony with Pennsylvania decisions, as shown by a number of authorities referred to by Mr. Justice POTTER in Baker v. Pittsburgh, Carnegie & Western Railroad Co., 219 Pa. 398, where he says (page 403) :

"As to the other specifications of error which question the correctness of the ruling of the trial judge, that under the reservation in plaintiff's deed, she had the right to sink a shaft upon the land sold by her for the purpose of mining the coal which she had reserved, we think the court below was clearly right. It is the established law in Pennsylvania. In a recent case, Youghiogheny River Coal Co. v. Allegheny Nat. Bank, 211 Pa. 319, our Brother Mestrezat said (p. 324): 'If the owner of the whole fee conveys the coal in the land in general terms, retaining the residue of the tract, the purchaser acquires the coal with the right to mine and remove it, provided he does so without injury to the superincumbent estate.' The undoubted right of the owner of coal to mine and remove it, was also expressly recognized in Pringle v. Vesta Coal Co., 172 Pa. 438, and the principle that 'one who has the exclusive right to mine coal upon a tract of land has the right of possession even as against the owner of the soil, so far as it is necessary to carry on his mining operations' is laid down in Turner v. Reynolds, 23 Pa. 199. See also Chartiers Block Coal Co. v. Mellon, 152 Pa. 286.

"The general rule is stated in 2 Lindley on Mines, section 813, where it is said: 'A grant of minerals implies the right to win them from the underlying soil. The use of some portion of the surface is necessary for the proper enjoyment of this right. To reach the minerals the miner must pass from the surface downward; to do this he has a right of way of necessity. He may sink through such land from the surface to the mines, in order to reach and work them.' And in 2 Sugden on Mines and Mining, section 1008, it is said: 'An express grant of all the minerals and mining rights in a tract of land is by natural implication the grant also of the right to open and work the mines, and to occupy for those purposes as much of the surface as may be reasonably necessary.'"

The removal of gas is a necessary incident to the mining of coal, in order that mining operations may be carried on with safety.    It is one of the implied rights incidental to every grant of minerals.    The bore hole in controversy is necessary to the proper ventilation of the mine in the coal immediately underlying plaintiffs' land, which coal is now being mined.

Our conclusion is that the preliminary injunction heretofore granted should therefore be dissolved.

The lower court granted a preliminary injunction as prayed for and thereafter dissolved same.    Plaintiffs appealed.

*Error assigned* was the decree of the court.

*H. S. Dumbauld,* for appellants.

*W. J. Sturgis,* with him *S. J. Morrow,* for appellees.

PER CURIAM, July 17, 1918:

The refusal to grant or continue a preliminary injunction is error only when the right threatened with invasion is an unquestionable one, and the only protection from irreparable injury to it is to be found in a court of equity: Crawford v. Sullivan, 238 Pa. 142.    In view of this rule the court below did not err in refusing to continue the injunction, and its decree dissolving the same is affirmed, at appellants' costs.