**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THE MONONGALIA COUNTY COAL COMPANY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WEISS WORLD, L.P. AND CHRISTOPHER P. WEISS, | : | No. 962 WDA 2018 |
| Appellants. | : | |

Appeal from the Order Entered, June 15, 2018,
in the Court of Common Pleas of Greene County,
Civil Division at No(s):  AD 558-2017.

BEFORE:   SHOGAN, J., KUNSELMAN, J., and STRASSBURGER*, J.

CONCURRING STATEMENT BY KUNSELMAN, J.:        **FILED MAY 07, 2019**

I agree with the majority decision in this case.  I write separately to elaborate further on the legal rights of these parties.

Since 2013, Mon Coal has owned the coal rights under the Appellants' 109+ acre farm in Greene County.  The severance deed, dated October 4, 1911, originally conveyed the coal rights to Mon Coal's predecessor in interest, Consolidated Coal, giving it a broad complement of mining rights.  In 2016, Mon Coal gave Appellants notice of its intent to mine the property.

In order to begin mining operations, Mon Coal needs to cross Appellant's property to construct an air ventilation shaft on adjacent property owned by Mon Coal.  The air shaft must be completed first and is necessary to prevent

_____
*   Retired Senior Judge assigned to the Superior Court.

exposure to methane gas for the health and safety of the underground coal miners. The air shaft also cannot be constructed without a sediment pond.

For over 150 years, our property laws have recognized that the holder of the mineral rights has a dominant estate over the holder of the surface rights. "One who has the exclusive right to mine coal upon a tract of land has the right of possession even as against the owner of the soil, so far as it is necessary to carry on … mining operations.." *Tuner v. Reynolds*, 23 Pa. 199, 206 (Pa. 1854).

> As against the owner of the surface, each [purchaser of a strata beneath the surface] would have the right, without any express words of grant for that purpose, to go upon the surface to open a way by shaft, or drift, or well, to his underlying estate, and to occupy so much of the surface beyond the limits of his shaft, drift, or well, as might be necessary to operate his estate, and to remove the product thereof. This is a right to be exercised with due regard to the owner of the surface, and its exercise will be restrained within proper limits by a court of equity, if this becomes necessary; but, subject to this limitation, it is a right growing out of the contract of sale, the position of the *stratum* sold, and the impossibility of reaching it in any other manner.

*Chartiers Block Coal Co. v. Mellon*, 152 Pa. 286, 296, 25 A. 597, 598 (1893).

As the majority points out, under Pennsylvania property law, the mineral estate is the dominant estate an entrails the right to use as much surface land as is reasonably necessary to extract minerals. *Minard Run Oil Co. v. U.S. Forest Serv.* 670 F.3d 236, 243-44 (3d Cir. 2011), as amended (Mar. 7, 2012). Thus, Mon Coal, as the owner of the mineral rights here, has the right

to use the surface land in any way it deems "reasonably necessary" to access the coal on the property.

Notably, the parties' relationship is not like an eminent domain action, where a governmental entity takes private property for public use and must give fair market value to the owner. Here, the Coal Company did not have to give the Appellants anything for reasonable use of the surface area. It already acquired that right when it purchased the deed to the coal rights. Mon Col's prior payment of $5,000 to the Appellants, in my mind, was nothing more than a gift, an effort to be a good neighbor, if you will. As it stated in its brief, Mon Coal entered the 2017 easement agreement for the sediment pond and related facilities "to avoid delay involved in litigation." Mon Coal Brief at 7. Accordingly, contrary to Appellant's position, the 2017 agreement between the parties did not alter the parties' respective property rights.

Mon Coal originally planned to use an access road to the east of Appellants' property to construct the air ventilation shaft. PA DEP since determined, however, that waivers would be necessary from other property owners in order to use the planned access road.[1] Instead, Mon Coal has

---

[1] Pennsylvania law allows an owner of an occupied dwelling to deny mining activities on the surface (including, for example, a ventilation shaft and access road to the same) if such activities are to occur within 300 feet of the dwelling, and in this manner, the operator must obtain a written waiver. 25 Pa. Code § 77.504 (a)(2). Where an access road is a private, "common use" access road in existence before the applicable regulations, however, no waivers are required. Here, no one has suggested that the 300-foot dwelling waiver applied to the structure on the Appellants' property that they refer to as a "dwelling."

chosen to use an alternative road across the Appellant's property. Mon Coal proposed three different alternatives to Appellants. Appellants rejected the first two options due to their proximity to the property's structures. The third alternative does not traverse near the structures. It will not interfere with the Appellants use of the structures, and it can be constructed so that it is not visible from the structures. Additionally, the third alternative access road will eventually be reclaimed and removed once Mon Coal's mining operation is finished.

Appellants' contention that they can block Mon Coal from using this alternative easement to access the adjacent property for construction of the air ventilation shaft (or seeking additional compensation for such alternative easement) is entirely without merit. To be sure, our jurisprudence allows the subsurface owner, in the first instance, to determine what is reasonably necessary for its mining operation.

In my opinion, Mon Coal did not need to file this lawsuit to exercise its rights.[2] Our courts have long held that it is the burden of the surface owner to seek legal redress to prevent or restrain the subsurface owner's exercise of its rights. **See Chartiers,** at 598 (subsurface owner's exercise of rights "will be restrained, within proper limits, by a court of equity if this becomes necessary...")

_____

[2] I understand why Mon Coal filed the suit in effort to move its mining operation forward and in an abundance of caution. But, as I will discuss, it should have been Appellants' burden to file this lawsuit.

The majority correctly disposes of this appeal, but I believe the Appellants should realize that they had the obligation to file a lawsuit if they believed Mon Coal was asking for too much, not the other way around. Our courts have long held, ***"It is for the surface owner to challenge the subsurface owner's reasonable exercise of its rights, not the converse." Belden & Blake Corp., v. Com., Dept. of Conservation and Natural Resources***, 969 A.2d 528, 532 (Pa. 2009) (emphasis added).

It appears that either Appellants do not want the mining operation to take place on their property, or they are holding out for additional compensation. In my opinion, neither is an option.