**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

‾‾‾‾‾‾‾‾‾‾

No. 18-1289

‾‾‾‾‾‾‾‾‾‾

DUHRING RESOURCE COMPANY,
A Pennsylvania Corporation,

Appellant

v.

UNITED STATES OF AMERICA

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

On Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court No.: 1:15-cv-00289)
District Judge: Honorable Barbara Jacobs Rothstein

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

Argued on December 3, 2018

(Opinion Filed: June 4, 2019)

Before: KRAUSE, SCIRICA and RENDELL, Circuit Judges

Matthew L. Wolford **(Argued)**
638 West Sixth Street
Erie, PA 16507
    *Counsel for Appellant*

Dana Kaersvang (**Argued)**
United States Department of Justice
Room 7209
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
*Counsel for Appellee*

---

O P I N I O N

---

**RENDELL**, *Circuit Judge*.

This case involves a dispute between the owner of four tracts of subsurface property in the Allegheny National Forest ("ANF")—Duhring Resources Company—and the United States Forest Service—the department of government responsible for managing the surface estate of the ANF. Duhring brought suit under the Federal Tort Claims Act ("FTCA"), seeking damages for the Service's tortious interference with its ability to exercise its oil, gas, and mineral ("OGM") rights. In order to have a cause of action under the FTCA, Duhring's action must be one that Pennsylvania would recognize against a private individual. The District Court held that Pennsylvania does not recognize Duhring's cause of action, and thus dismissed Duhring's complaint for lack for jurisdiction. Our reading of Pennsylvania case law in light of an intervening decision from the Pennsylvania Supreme Court leads us to vacate the District Court's order and remand for further proceedings consistent with this opinion.

2

I

At the turn of the 19th century, all of the land which now comprises the ANF was privately owned. That changed in 1911 when Congress passed the Weeks Act and authorized the federal government to begin purchasing land to designate as forest reservations. *See* Weeks Act of 1911, Pub. L. No. 61–435, 36 Stat. 961 (codified at 16 U.S.C. §§ 515-21). But property isn't always cheap, particularly subsurface property that is rich in natural resources. So in Pennsylvania, long a hub for coal mining, the federal government only purchased tracts of surface estate, leaving almost all of the subsurface estate in private hands.

Under Pennsylvania law, the subsurface estate is the "dominant estate." This means that the owner of a subsurface estate "has the right to go upon the surface in order to reach the estate below, 'as might be necessary to operate his estate.'" *Belden & Blake Corp. v. Commonwealth, Dep't of Conservation & Nat. Res.*, 969 A.2d 528, 532 (Pa. 2009) (citing *Chartiers Block Coal Co. v. Mellon*, 25 A. 597, 598 (Pa. 1893)). But this right to access the surface estate is not unqualified: the subsurface estate holder must show "due regard" to the rights of the surface estate holder. *Id.* at 530. And "due regard" has been interpreted to include, among other requirements, providing at least 60 days' notice to the surface estate holder before commencing drilling. *See United States v. Minard Run Oil Co.*, No. 90-12, 1980 U.S. Dist. LEXIS 9570 (W.D. Pa. Dec. 16, 1980) (*Minard Run I*). This understanding was subsequently codified in the Energy Policy Act of 1992. 30 U.S.C. § 226(o)(2) (requiring "that reasonable advance notice be furnished to the Secretary of Agriculture at least 60 days prior to the commencement of surface disturbing activities").

3

Thus, this framework envisions a "cooperative approach" to balancing the rights of surface and subsurface estate holders. *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 244 (3d Cir. 2011) (*Minard Run III*). "Under this framework,"

> [M]ineral rights owners who planned to conduct drilling operations would provide the Service with the required notice and the two parties would then negotiate the details of drilling operations, such as the location of wells or access roads, so as to prevent any unnecessary surface use. At the end of this process, the Service would issue a Notice to Proceed (NTP) to the mineral rights owner, which acknowledged receipt of notice from the mineral rights owner and memorialized any agreements between the parties regarding drilling operations.

*Id.*

Suits against the federal government are normally prohibited based on sovereign immunity. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). Under the FTCA, however, "the United States has waived its sovereign immunity" for some tort claims. *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008). Specifically, the FTCA waives sovereign immunity for, and thus grants federal jurisdiction over, claims that are:

> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] *under circumstances where*

4

*the United States, if a private person, would be liable to the claimant in ac-*

*cordance with the law of the place where the act or omission occurred.*

*Meyer*, 510 U.S. at 477 (1994) (quoting 28 U.S.C. § 1346(b)) (emphasis added).  This dispute concerns the sixth requirement under the FTCA.  In this case, the "place where the act or omission occurred" is Pennsylvania.  So we look to Pennsylvania law to determine whether the alleged cause of action would be recognized.

Because this appeal comes to us from an order of the District Court dismissing the case, we accept the factual allegations made in Duhring's complaint as true.  *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  Duhring is an oil and gas company organized under Pennsylvania law.  In the mid-2000's, it acquired the OGM rights associated with four parcels of land in the ANF—Lots 7, 8 and 9 and Warrant 3672.  As with all property in the ANF, the United States owned the surface estate above each of these parcels.  In 2007, Duhring sent the Service its "notice of intent to conduct OGM development operations" at these four parcels.  *See* SA 7-9.

Upon receiving notices of intent to conduct drilling operations from Duhring, the Service failed to issue NTPs within the 60-day timeframe for all four tracts.  The Service informed Duhring that it could not commence drilling operations until it received an NTP and, "on multiple occasions, they and their subordinates threatened criminal prosecution" if it proceeded without one.  Compl. ¶ 23.  The Service is also alleged to have interfered with Duhring's use of the roads and its right to use stone found at the plots, and to have failed to remove timber from the plots in accordance with the applicable laws and regula-

tions. These delays also prevented Duhring from fulfilling the terms of its lease by completing a certain number of wells on its plots. Duhring sought to recover lost profits resulting from these actions to the tune of over $8.5 million. After exhausting its administrative remedies, it filed this action in federal court under the FTCA. It alleged seven counts of tortious interference with enjoyment of a servitude, six of which have been raised here on appeal. The gravamen of Duhring's complaint is that, through the aforementioned actions, the Service tortiously interfered with Duhring's ability to exercise its OGM rights.[1] The Service moved to dismiss Duhring's complaint for lack of jurisdiction, claiming, *inter alia*, that Pennsylvania would not recognize Duhring's cause of action.

The District Court granted the Service's motion to dismiss, holding that it lacked jurisdiction over Duhring's claims for two reasons: *first*, the claims cannot be brought under the FTCA because Pennsylvania does not recognize the alleged cause of action; and *second*, Duhring's claims are barred by Pennsylvania's economic loss doctrine.

---

[1] Specifically, Duhring alleges the following counts. Count One is Duhring's most expansive claim. It alleges $8,552,000 in damages caused by delays associated with the Service's failure to issue NTPs within the 60-day timeframe, its threat of criminal prosecution, it's blocking of Duhring's use of the roads, and its interference with stone mining and timber removal. *See* Compl. ¶ 8-48. Duhring did not appeal the District Court's dismissal of Count Two. *See* Compl. ¶ 49-52. In Count Three, Duhring alleges that a Service truck blocked access to one of its wells, resulting in $148 in lost profits. *See* Compl. ¶ 53-56. In Counts Four and Five, Duhring alleged that the Service refused to sell the timber at Lot 8 and Warrant 3672 at a reasonable price, and refused to allow Duhring to remove the timber from those lots, resulting in $61,189.80 in damages. *See* Compl. ¶ 57-61. In Count Six, Duhring alleges that the Service blocked its access to the roads, citing a lack of valid road permits, resulting in $5,293.60 in damages. *See* Compl. ¶ 62-65. In Count Seven, Duhring alleges that the delays associated with Duhring's access to Lot 9 prohibited it from fulfilling the terms of its lease, which required it to drill seven wells before a certain date. This caused damages of $150,000, which Duhring paid to extend its lease. *See* Compl. ¶ 66-70.

The Court held that "none of the cases on which Plaintiff relies demonstrate that Pennsylvania recognizes a cause of action for money damages sounding in tort where a surface owner delays access to—but does not destroy (or even damage)—a subsurface OGM estate." A 14. In reaching this determination, the Court analyzed three cases: *Belden & Blake*, *Chartiers*, and *Minard Run II*.[2] It concluded that those cases "involved only the grant or denial of injunctive relief and/or declaratory relief." A 15. They do not "recognize what Plaintiff has styled as the tort of 'unreasonable interference with enjoyment of servitude,' nor do they provide authority for recovering money damages." *Id.* Instead, the Court held that Duhring's remedies are limited to injunctive relief. *See* A 14.

The District Court also held that Duhring's claims are barred by Pennsylvania's economic loss doctrine, which adopts "the general rule of law that economic losses may not be recovered in tort absent any physical injury or property damage." SA 17-19 (quoting *Gen. Pub. Utilities v. Glass Kitchens of Lancaster, Inc.*, 542 A.2d 567, 570 (Pa. 1988)). Given that Duhring "does not allege any damage to its OGM resources," the District Court reasoned, the doctrine bars Duhring from recovering from these purely economic losses. A 17.

For the aforementioned reasons, the District Court granted the Service's motion to dismiss. Duhring then filed this timely appeal.

---

[2] *Belden & Blake Corp. v. Commonwealth, Dep't of Conservation & Nat. Res.*, 969 A.2d 528 (Pa. 2009); *Chartiers Block Coal Co. v. Mellon*, 25 A. 597 (Pa. 1893); *Minard Run Oil Co. v. U.S. Forest Serv.*, No. 09-125, 2009 WL 4937785 (W.D. Pa. Dec. 15, 2009), *aff'd*, 670 F.3d 236 (3d Cir. 2011).

II

Duhring asserted federal subject matter jurisdiction under the FTCA, 28 U.S.C § 1346(b). *See also* 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's order granting a motion to dismiss for lack of jurisdiction *de novo*. *See Merando*, 517 F.3d at 163-64.

III

Duhring urges that the District Court erred in dismissing its complaint *in toto*. We agree, but we part ways with Duhring as to the extent of the Government's liability under Pennsylvania law.

The resolution of the issues before us requires us to interpret Pennsylvania state law. "When ascertaining Pennsylvania law, the decisions of the Pennsylvania Supreme Court are the authoritative source." *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010). But in the absence of a controlling decision from the Pennsylvania Supreme Court, we must predict how it would decide the question. *See Alpizar-Fallas v. Favero*, 908 F.3d 910, 914 (3d Cir. 2018). In doing so, we may look to "decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue, as well as to analogous decisions, considered *dicta*, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Spence*, 623 F.3d at 216-17 (citation omitted).

The District Court erred in holding that it lacked jurisdiction over all of Duhring's claims under the economic loss doctrine. Whatever ambiguity surrounded the applicability

8

of the economic loss doctrine at the time the District Court issued its opinion has been removed by the Pennsylvania Supreme Court's recent decision in *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018). In *Dittman*, the Court held that the economic loss doctrine does not apply where, as here, "the plaintiff can establish the defendant's breach of a legal duty arising under common law that is independent of any duty assumed pursuant to contract." *Id.* at 1038. Because Duhring alleges interference with a property right, not a contract, the economic loss doctrine does not bar its claim.

The Court's reasoning in *Dittman* aligns with its prior cases on the economic loss doctrine. For example, in *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, the Court held that the economic loss doctrine provides that "no cause of action exists for *negligence* that results solely in economic damages unaccompanied by physical injury or property damage." 985 A.2d 840, 841 n.3 (Pa. 2009) (quoting *Adams v. Copper Beach Townhome Communities, L.P.,* 816 A.2d 301, 305 (Pa. Super. 2003)) (emphasis added). Duhring's claim, however, does not sound in negligence. Moreover, applying the economic loss doctrine to Duhring's claim would conflict with cases allowing such claims without a showing of any damages. *See Jones v. Wagner*, 624 A.2d 166, 171 (Pa. Sup. 1993) ("We emphasize that Pennsylvania law requires no showing of physical harm or damage to the land before a possessor of land can enforce his right to freely enjoy unencumbered and exclusive use of property he rightfully possesses."); *see also* 39 Pennsylvania Law Encyclopedia § 501 ("Any violation of the rights of the owner of an easement is actionable, whether any actual damage has resulted therefrom."). In short, the economic loss doctrine does not bar Duhring's claim.

9

The District Court held that Pennsylvania does not recognize a claim for money damages sounding in tort for the delay caused here. That conclusion is incorrect. Pennsylvania law does recognize the tort of interference with a servitude. That Duhring alleges this tort in the split-estate context does not affect the availability of this claim. And, as we discuss below, money damages are recoverable. However, we predict that the Pennsylvania Supreme Court would limit the Service's liability for this tort to loss in rental value of the servitude, and would not permit recovery of lost profits.

Duhring's property interest in accessing the surface estate is best described as an easement. In *Belden & Blake*, the Pennsylvania Supreme Court recognized the petitioners' assertion that it, as a subsurface estate holder, had an "implied easement with a right to enter the [surface estate]." 969 A.2d at 529. Likewise, Pennsylvania's lower courts also refer to this property interest as an easement. *See, e.g., Babcock Lumber Co. v. Faust*, 39 A.2d 298, 303 (Pa. Super. 1944) ("The reserved mining rights imposed upon the surface an *easement or servitude* appurtenant to the dominant mineral estate which remained in the grantors after the conveyance.") (emphasis added). And the Weeks Act, which authorized the federal government to purchase the land comprising the ANF, also refers to the rights of subsurface estate holders vis-à-vis the surface estate as "rights of way, *easements*, and reservations retained by the owner from whom the United States receives title …." 16 U.S.C. § 518 (emphasis added). *See also Minard Run I*, 1980 U.S. Dist. LEXIS, at *12 (describing the subsurface estate holder's property interest as a "pecurliar type of easement").

Given that Duhring has an easement, *i.e.,* a type of servitude, over the surface estate, Pennsylvania law clearly recognizes a cause of action for tortious interference with that property interest. *See Schmoele v. Betz*, 61 A. 525, 527 (Pa. 1905) (recognizing a suit in equity regarding interference with an easement); *Mershon v. Walker*, 64 A. 403, 405 (Pa. 1906) (same); *see also* 39 Pennsylvania Law Encyclopedia § 502 ("The owner of an easement, upon interference with the easement by the owner of the servient estate, may proceed by action at law for damages."). And because Pennsylvania recognizes this cause of action, the District Court has jurisdiction over Duhring's claim under the FTCA, unless an exception to the FTCA applies.

We note that the parties raised before the District Court and briefed on appeal whether the discretionary function exception to the FTCA's waiver of sovereign immunity applies in this case. While the District Court did not reach this issue given its previous disposition, whether the discretionary function exception applies goes to the Court's subject matter jurisdiction and thus is potentially dispositive. *See* 28 U.S.C. § 2680(a); *Merando*, 517 F.3d at 174-75. Having considered the parties' arguments as to whether the exception applies or the Forest Service's alleged conduct was *ultra vires*, we conclude that this is a matter appropriate for resolution by the District Court. The Government cites various statutes and regulations that are potential sources of authority for its alleged conduct. *See* Gov't Supp. Br. 3-5 (citing 16 U.S.C. § 537; 36 C.F.R. § 261.54(c) (road use permits); 30 U.S.C. § 226(o)(4); 16 U.S.C. § 472a; 36 C.F.R. § 261.6 (timber removal); 16 U.S.C. § 559 (arrests)). However, both ascertaining the scope of the Forest Service's au-

11

thority created by those sources and deciphering the causation issues created by their inter-action with the rights of subsurface owners that this Court recognized in *Minard Run Oil Co. v. Forest Service*, 670 F.3d 236, 254 (3d Cir. 2011) (*Minard III*), may well entail further fact-finding, including expert testimony as to the Forest Service's actual policies and practices. We leave it to the District Court to consider these issues in the first instance.

If the discretionary function exceptions does not apply, then even though Duhring's claim is actionable under Pennsylvania law, the question remains as to the proper measure of damages. While the relief available is not limited to an injunction, based on the available authorities under Pennsylvania law we predict that damages for this claim are limited to the loss in rental value of the property interest.

We turn first to cases from the Pennsylvania Supreme Court involving interference with a servitude. In *Rabe v. Shoenberger Coal Co.*, the Court held, "if the injury caused a total or partial loss of the land for a limited time, the diminution in rental value is the measure [of damages]." 62 A. 854, 855 (Pa. Super Ct. 1906). This rule is reflected in the decisions of the Pennsylvania lower courts as well. *See Deeb v. Ferris*, 28 A.2d 355, 356 (Pa. Super. 1942) ("[A]ny damages awarded the plaintiff [will] be confined to an amount necessary to connect the sewer and to loss of rent."). Furthermore, the Pennsylvania Law Encyclopedia provides that an easement holder may "recover for the loss of use and the cost of restoring the easement to its former condition." 39 Pennsylvania Law Encyclopedia § 502.

Duhring argues that damages are available for its lost profits, citing *Hillsdale Coal & Coke Co. v. Pennsylvania R. Co.*, 78 A. 28 (Pa. 1910), and *Esgro v. Gibbons*, 82 A.2d

12

318 (Pa. Super. 1951). Although both cases involved awards of lost profits, they offer questionable guidance for this case. In *Hillsdale*, the Court noted that two sources provide for damages: a statute providing for treble damages and an Interstate Commerce Commission rule that specifically provided for lost profits. *See* 78 A. at 30. We have no such basis for lost profits here. And in *Esgro*, the plaintiff was awarded lost profits by a jury, but the evidence of lost profits and submission of that issue to the jury was never contested, or ruled upon, at trial. *See Esgro*, 82 A.2d at 319-20. So there is actually no Pennsylvania case law that holds that any damages other than for loss of rental or use value are available for interference with an easement. Accordingly, we hold that the proper measure of damages for Duhring's claim is the loss of rental value of the servitude.

## IV

Duhring claims damages, for the most part, in the nature of profits lost as a result of the interference with Duhring's access to its easement. We have held such profits to not be recoverable. While Duhring did not assert a claim for lost rental value, we will allow it to seek those damages on remand. Accordingly, we will vacate the District Court's order and remand for further proceedings consistent with this opinion.